IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Demarko Steele, | : | |
| Plaintiff | : | Case No.  2: 04-CV-189 |
| v. | : | Judge Frost |
| Officer James Jennings, *et al.*, | : | Magistrate Judge Abel |
| Defendants | : | |

## OPINION & ORDER

In this 42 U.S.C. § 1983 action, Plaintiff  Demarko Steele ("Steele") alleges that

Defendant James Jennings ("Defendant"),[1] a police officer for the City of Columbus, violated his

First and Fourth Amendment rights.  Both sides move for partial summary judgment.  (Docs. # #

14, 15).  Additionally, Jennings moves the Court for an order striking several exhibits Steele

offered in support of his motion for partial summary judgment.  (Doc. # 36). The parties have

completed briefing the motions, and the motions are therefore ripe for the Court's review.

## BACKGROUND

Steele was a sixteen (16) year old freshman at Marion Franklin High School on March

24, 2003.  (Steele Dep. 7; Doc. # 1 at ¶ 2).  When school concluded on that day, he grabbed his

backpack and headed out the front door to nowhere in particular.  (Steele Dep. at 8, 9, 13, 33).

He saw a "big scuffle" and noticed that some kids had gotten into a fight.  *Id.* at 13.  He stood

---

[1] The Court's April 22, 2005 Order dismissed all of Steele's claims against Defendant
City of Columbus with prejudice.  (Doc. # 30).

1

about twenty (20) yards from the fight.  *Id.*

Officer Bobo ("Bobo") was the special duty officer assigned to the high school that day. (Bobo Dep. 4).  He requested assistance after the fights broke out at the school, and Defendant responded to that request.  (Def. Dep. 8-10; Bobo Dep. 4-5).  Upon approaching the school in his police cruiser, Defendant observed a large group of teenagers on the front lawn directly in front of the main entrance yelling and screaming.  (Def. Dep. 11).  Bobo was in the middle of the group attempting to separate two individuals.  *Id.*  Bobo estimated the crowd to be about fifty (50).  (Bobo Dep. 6).  Teenagers were all over the area and in the front lawn.  (Def. Dep. at 13). After observing the scene but before exiting his cruiser, Defendant requested additional backup. *Id.* at 14.  Defendant was aware that the police had previously dealt with shootings, thefts, and other incidents of violence at the school.  *Id.* at 58.  Defendant then exited his cruiser and began helping quell the disturbance.  *Id.*

Additional officers, including Sergeant Alex Behnen ("Behnen"), a supervisor, arrived at the scene and aided in dissipating the disturbance.  *Id.* at 19-20. Behnen spoke with Brad Chamberlain ("Chamberlain"), one of the school's administrators, and then told Defendant and the other officers on the scene to order the students to leave school property.  *Id.* at 20-21, 25. Chamberlain agreed with the decision to tell the students to leave.  (Chamberlain Aff. ¶ 7). Defendant then began walking through the crowd, yelling at the students to leave school property.  *Id.* at 21, 24, 27, 33.

Steele heard Defendant telling everyone to leave the school grounds.  (Steele Dep. 13). Nevertheless, he started heading towards the school.  *Id.*; (Def. Dep. 46, 48).  Defendant approached him and twice told him to leave the premises. (Steele Dep. 13).  Steele continued

walking in the direction of the school.  *Id.*  The two exchanged words, although the content of their conversation is unclear.  Defendant then escorted Steele to his cruiser and placed him in the back of the car.

The parties' versions of how Defendant escorted Steele diverge at this point.  Steele's complaint alleges that Defendant: (1) used excessive force against him; (2) lacked probable cause to arrest him; and (3) arrested him in retaliation for his exercising his First Amendment rights.  (Doc. # 1).  Defendant denies Steele's excessive force and retaliation claims, and asserts that he had probable cause to place Steele in custody.  (Doc. # 14).  Both parties move for partial summary judgment.   (Doc. # # 14, 15).

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court must therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A

3

genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52). However, in ruling on a motion for summary judgment, "a district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

## DISCUSSION

### I. DEFENDANT'S MOTION TO STRIKE

Preliminarily, the Court must rule on Defendant's motion to strike exhibits 2, 3, 4, and 6 that Steele submitted in support of his motion for partial summary judgment. (Doc. # 36). Steele filed a response in opposition (Doc. # 42), to which Defendant replied. (Doc. # 43).

Exhibit 2 is the a one-page document entitled "Investigative Summary." The author is not identified, although it appears to summarize an internal affairs investigation of Defendant that started after Charles Clark, Steele's grandfather, complained to the police department about Defendant's treatment of Steele. However, it is clear that the document does not constitute the entire summary, but rather is only one page of the summary.

Although a party must produce evidence in support of its opposition to a motion for summary judgment, not all types of evidence are permissible. *McQuain v. Ebner Furnaces, Inc.*, 55 F. Supp. 2d 763, 769-770 (N.D. Ohio 1999). For example, "hearsay evidence cannot be

4

considered on a motion for summary judgment." *Wiley*, 20 F.3d at 225-26.  Additionally, the

Sixth Circuit has held "'it is well settled that only admissible evidence may be considered by the

trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222,

226 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.

1988)).  Admissible evidence is defined as "evidence that is relevant and of such a character . . .

that the court should receive it."  (Black's Law Dictionary 235 (pocket ed. 1996)).  Federal Rule

of Evidence 401 defines relevant evidence as "evidence having any fact that is of consequence to

the determination of the action more probable or less probable than it would be without the

evidence."  Authentication is a special aspect of relevancy concerned with establishing the

genuineness of evidence and is a condition precedent to admissibility.  Fed. R. Evid. 901(a) and

advisory committee's notes.

Evidence that is neither authenticated nor admissible "may be considered by the district

court unless the opposing party affirmatively raises the issue of the defect. The burden is on the

opposing party to object to the improper evidence; failure to object constitutes a waiver."

*McQuain*, 55 F. Supp. 2d at 770.  Defendants have objected here.  (Doc. # 36).

Defendant asserts that Exhibit 2 lacks foundation and constitutes inadmissible hearsay.

(Doc. # 36 at 2).  Steele counters that the document is admissible because Defendant provided

the document to him during discovery.   (Doc. # 42 at 1).   Simply because the Defendants

produced the documents does not make them authentic - production does not equate to

authentication.  "The failure to authenticate a document properly precludes its consideration on a

motion for summary judgment."  *Robinson v. Bodoff*, 355 F.Supp.2d 578, 582 (D. Mass. 2005)

(striking all exhibits that were submitted without affidavits and were not self-authenticating).

Unauthenticated exhibits are not proper evidence for opposing or supporting a summary judgment motion.  As such, the Court cannot consider it and the Court **GRANTS** Defendant's motion to strike Exhibit 2.  *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994); (Doc. # 36).

Exhibit 3 purports to be the actual audiotape of the interview of Defendant by the police department's internal affairs bureau.  Defendant raises the same arguments - lack of foundation and authentication - to which Steele offers the same response - the Defendant produced the tape, therefore it must be authentic. (Doc. # 36 at 2; Doc. # 42 at 1).  Likewise,  the Court responds uncreatively - specifically, the Court **GRANTS** Defendant's motion to strike Exhibit 3 for lack of authentication. (Doc. # 36).

Exhibit 4 purports to be a transcript of Exhibit 3, the tape recording.  The Court **GRANTS** Defendant's motion to strike this exhibit for the same reasons the Court struck the audiotape.  The transcript was prepared by someone in Steele's counsel's office.  (Doc. # 42 at 1; Doc. # 22 at ¶ 2).  In an apparent attempt to authenticate the transcript, Steele's counsel submitted an affidavit that states, in relevant part "Exhibit 4 is a transcript, prepared by my office and which I believe to be accurate, of the tape which is Exhibit 3."  (Doc. # 22 at ¶ 2).  This affidavit fails to identify the individual who prepared the transcript, and to establish the basis for his belief that the transcript is accurate.  Accordingly, because the affidavit fails to comport with Fed. R. Civ. P.56(e), which requires the affidavit to be based on personal knowledge. Additionally, the transcript is not authenticated. The Court **GRANTS** the Defendant's motion to

strike Exhibit 4.[2] (Doc. # 36).

Finally, Defendant moves to strike Exhibit 6.  That exhibit consists of medical records from Steele's visit to the emergency room on the day of the incident as well as pictures of Steele. Defendant argues that the Court should strike this exhibit because Steele failed to authenticate them and it contains hearsay. (Doc. # 36 at 3).  Steele counters that he provided Defendant with this information in discovery, therefore ostensibly arguing that the exhibit is authentic.  (Doc. # 42 at 2).

Once again, Defendant's arguments prevail.  To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e). *Starks-Umoja v. Fed. Express Corp.*, 341 F. Supp. 2d 979, 983 (D. Tenn. 2003) (quoting Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2722 (1998)). Steele failed to provide such an affidavit, and thus the Court **GRANTS** Defendant's motion to strike Exhibit 6.  (Doc. # 36).

In short, the Court **GRANTS** Defendants' motion to strike in its entirety.[3]  (Doc. # 36). As a consequence, Exhibits 2, 3, 4, and 6 to Steele's Motion for Partial Summary Judgment (also relied upon by Steele in his response in opposition to Defendant's motion for partial summary judgment) are **STRICKEN** from the record.

## II.  FIRST AMENDMENT CLAIMS

Steele's first claim is that Defendant "may have" arrested him in retaliation for his

---

[2] Steele's counsel invites the Court authenticate the transcript itself by listening to the tape and reviewing the transcript.  (Doc. # 42 at 1).  This is not the Court's job.

[3] The Court notes that Steele, upon learning of Defendant's motion, could have moved the Court for leave to file authenticating affidavits, or could have attempted to file them as a response to Defendant's motion, but Steele elected not to take either option.

7

exercising his First Amendment rights.[4]  (Doc. # 1 at ¶ 13).  Defendant moves for summary judgment on this claim, arguing that Steele's Complaint fails to allege that he was engaged in protected speech and that such speech was the reason that Defendant arrested him.  (Doc. # 14 at 12).  Steele responds by arguing that he believes that Defendant arrested him because he did not like what Steele said to him immediately before the arrest.  (Doc. # 21 at 15).

Steele's claim that Defendant violated his First Amendment rights is brought pursuant to 42 U.S.C. § 1983, under which Steele must prove that: (1) there was a deprivation of a right secured by the Constitution and (2) the deprivation was caused by a person acting under of color of state law. *Wittstock v. Mark A. Van Sile, Inc*. 330 F.3d 899, 902 (6th Cir. 2003). Because the Defendant is a municipal police officer, there is no dispute over the second component. Defendant argues, however, that Steele has not proved a constitutional deprivation.

The elements of a § 1983 First Amendment retaliation claim are as follows:  (1) the plaintiff engaged in a constitutionally protected activity; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

---

[4] The Court may examine the First Amendment claim before turning to the Fourth Amendment claim because the issue of probable cause to arrest is not determinative of the First Amendment claim.  *Bakos v. City of Olmsted Falls*, 73 Fed. Appx. 152, 158 (6th Cir. 2003)

Defendant asserts that Steele failed to establish the first element - that he was engaged in protected speech. (Doc. # 14 at 12, Doc. # 32 at 14).  The First Amendment protects speech that may be "fairly characterized as constituting a matter of public concern."  *Chappel v. Montgomery County Fire Protection Dist. No. 1*, 131 F.3d 564, 573 (6th Cir. 1997).  In order to conclude that speech addresses a matter of public concern, the Court "must be able to fairly characterize the expression as relating to any matter of political, social, or other concern to the community."  *Id.* at 574 (citation omitted).

Steele testified in his deposition that Defendant twice told him to leave the school grounds.  (Steele Dep. 13).  Steele and Alston nevertheless continued to walk towards the school. *Id.*  According to Steele, Defendant started walking towards him and saying "You need a friend? you look lonely."[5] *Id.* at 14.  Alston told Steele not to say anything in response.  *Id.*  Steele told Alston that he was "not going to stoop to [Defendant's] level."  *Id.*  Defendant then asked Steele what he had said, and shortly thereafter Defendant took Steele into custody.  *Id.*

Steele neglects to argue that his speech dealt with a matter of public concern. (Doc. # 21 at 15-16).  For sure, the content of Steele's speech at issue precludes such an argument - Steele's

---

[5] In contrast, Defendant testified in his deposition:
 Q: Why don't you just tell me the conversation you had with [Steele] as best as you can remember.  If you have quotes, great; but if you don't, give me the gist of it.
 A: The gist of it was, why are you still here; why are you standing here? Response from him was theat his friends were in the cruiser or in the wagon. Response from me: You need to get new friends.  They're trouble.  You need to get out of here.  Response from him: I don't recall exactly what he said.  And then physical response from him, he turned away from me and walked towards the [school] building.

Jennings Dep. 45-46.
 For the purposes of the instant motion, the Court will view the facts in a light most favorable to Steele as the non-moving party on the First Amendment claim.

comments did not relate to any matter of political, social, or other concern to the community. Hence, Steele has failed to establish the first element of his retaliation claim, and the Court thus concludes that Defendant is entitled to summary judgment on that claim.  (Doc. # 14).

## III.    FOURTH AMENDMENT CLAIMS

Steele asserts three separate claims under the Fourth Amendment.  First, Steele claims that Defendant arrested him without probable cause.  (Doc. # 1 at ¶ 13; Doc. # 15 at 1).  Second, Steele maintains that Defendant used excessive force against him in effectuating the arrest.  *Id.* Steele's excessive force claim consists of two sub-parts.[6]  Specifically, Steele asserts that Defendant grabbed his neck when escorting him to the cruiser.[7]  *Id*; Doc. # 21 at 13. Steele also claims that Defendant slammed his head on the trunk of the police cruiser. (Doc. # 1 at ¶ 13; Doc. # 21 at 13).

---

[6] Steele's Complaint also references excessive force in terms of alleging that Defendant "jerked [Steele's] backpack off of his shoulder and onto the ground," "shoved and pulled [Steele] to the police cruiser," and "grabbed [Steele]."  (Doc. # 1 at ¶ ¶ 6, 14).  Defendant moved for summary judgment on those claims, but Steele did not respond to Defendant's motion regarding those claims.  (Docs. # # 14, 15).   Therefore, Steele waived those claims.  *See Packer v. City of Toledo*, 1 Fed. Appx. 430, 434 (6th Cir. 2001); *see also Smith v. Thornburg*, 136 F.3d 1070, 1081 (6th Cir 1998).

[7] Steele's affidavit contradicts his deposition testimony regarding his excessive force claim involving his neck.  Accordingly, the Court will only rely on Steele's deposition testimony and will disregard Steele's affidavit.  *See Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir.1986).

In contrast, Defendant denies that he arrested Steele, and instead maintains that he seized him with the intention of arresting him. (Doc. # 32 at 7, 8). Defendant further argues that he had probable cause to seize Steele, denies using excessive force when escorting him to the cruiser and handcuffing him, and denies slamming Steele's head on the cruiser. (Doc. # 14 at 12-15; Doc. # 31 at 10, 11).

Although Defendant declined to move for summary judgment on Steele's excessive force claim relating to his head, Steele did move for summary judgment on that claim. (Doc. # 14 at 16; Doc. # 15 at 1, 22). Accordingly, the Court now turns to an examination of the cross motions for summary judgment on Steele's Fourth Amendment claims.

## A. Arrest without probable cause

The Fourth Amendment states in pertinent part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "It is well established that any arrest without probable cause violates the Fourth Amendment." *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003) (citing *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003)). Furthermore, in order for a wrongful arrest claim to succeed under § 1983, Steele must prove that the police lacked probable cause. *Feathers v. Aey*, 319 F.3d 843, 851 (6th Cir. 2003).

For probable cause to arrest to exist, the "facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett, 316 F.3d at 580 (citing Michigan v. DeFillippo*, 443 U.S. 31,

11

37 (1979)); *see Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002) (citing *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988)). Put simply, "A police officer has probable cause if there is a fair probability that the individual to be arrested has either committed or intends to commit a crime." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (internal quotation and citations omitted). Whether there exists a probability of criminal activity is assessed under a reasonableness standard based on "'an examination of all facts and circumstances within an officer's knowledge at the time of an arrest.'" *Crockett*, 316 F.3d at 580 (quoting *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999)). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972).  The existence of probable cause is a jury question, unless there is only one reasonable determination that is possible.  *Crockett,* 316 F.3d at 581; *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000).

Initially, the parties disagree about whether Defendant arrested Steele.  Defendant predictably posits that he took custody of Steele with the intention of arresting him, but exercised his discretion and decided not to arrest him.[8]  (Doc. # 31 at 10, 11; Doc. # 32 at 7, 8).  Just as predictably, Steele counters that Defendant's actions equated to an arrest. (Doc. # 15 at 1, 7, 8).  In this instance, this is a distinction without a difference because the Fourth Amendment requires probable cause for both seizures and arrests.  The relevant inquiry thus becomes whether it

---

[8] Undoubtedly, Defendant seized Steele by placing him in the back of the locked police cruiser.  *See United States v. Kendricks*, 127 Fed. Appx. 836, 841-842 (6th Cir. 2005) (stating "A 'seizure' within the meaning of the Fourth Amendment occurs when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.").  Morever, Defendant testified that Steele was not free to leave.  (Def. Dep 54, 64).

would be clear, to a reasonable officer facing the specific factual situation involved in the instant case, that there was not probable cause to seize or arrest Steele.  If there is more than one reasonable determination possible, the matter is a jury question.

A brief review of the facts is necessary to frame the probable cause inquiry.  Bobo requested assistance after fights broke out at the school, and Defendant responded to that request. (Def. Dep. 8-10; Bobo Dep. 4-5).  Upon approaching the school, Defendant observed a large group of teenagers on the front lawn directly in front of the main entrance yelling and screaming. (Def. Dep. 11). Bobo was in the middle of the group attempting to separate two individuals.  *Id.* Bobo estimated the crowd to be about fifty (50).  (Bobo Dep. 6).  Teenagers were all over the area and in the front lawn.  (Def. Dep. at 13).  After observing the scene but before exiting his cruiser, Defendant requested additional backup.  *Id.* at 14.  Defendant was aware that the police had dealt with shootings, thefts, and other incidents of violence at the school before.  *Id.* at 58. Defendant then exited his cruiser and began helping quell the disturbance.  *Id.*

Additional officers, including Sergeant Alex Behnen ("Behnen"), a supervisor, arrived at the scene and aided in dissipating the disturbance.  *Id.* at 19-20. Behnen spoke with Brad Chamberlain ("Chamberlain"), one of the school's administrators, and then told Defendant and the other officers on the scene to order the students to leave school property.  *Id.* at 20-21, 25. Chamberlain agreed with the decision to tell the students to leave.  (Chamberlain Aff. ¶ 7). Defendant then began walking through the crowd, yelling at the students to leave school property.  *Id.* at 21, 24, 27, 33.

Steele heard Defendant telling everyone to leave the school grounds.  (Steele Dep. 13). Nevertheless, he started heading towards the school.  *Id.*; (Def. Dep. 46, 48). Defendant

13

approached him and twice told him to leave the premises. (Steele Dep. 13).  Steele continued

walking in the direction of the school.  *Id.*  Defendant then escorted Steele to his cruiser and

placed him in the back of the car.[9]

Defendant asserts that because Steele failed to heed his warnings to leave, he had

probable cause to take Steele into custody under Ohio Revised Code § 2921.11, Ohio's criminal

trespass statute. (Def. Dep. 32, 48, 54-55, 70).  That statute provides:

(A) No person, without privilege to do so, shall do any of the following:

(1) Knowingly enter or remain on the land or premises of another;

(2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows the offender is in violation of any such restriction or is reckless in that regard;

(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access;

(4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either.

(B) It is no defense to a charge under this section that the land or premises involved was owned, controlled, or in custody of a public agency...

(D) Whoever violates this section is guilty of criminal trespass, a misdemeanor of the fourth degree.

(E) As used in this section, "land or premises" includes any land, building, structure, or place belonging to, controlled by, or in custody of another, and any separate enclosure or room, or portion thereof.

---

[9] The Court will address Steele's excessive force claims *infra*.

14

Defendant told the crowd to disperse after Behnen spoke with Chamberlain. (Chamberlain Aff. ¶ 7).  Steele admitted that Defendant twice told him to leave school grounds. (Steele Dep. 13).  Steele did not own the property at issue.  Steele further testified that he disregarded Defendant's warnings by walking towards the school.  *Id.*  Defendant took custody of Steele with the intent of arresting him for criminal trespassing. (Def. Dep. 54-55).

Given this evidence, the Court concludes that Defendant had probable cause to seize or arrest Steele.  Defendant knew that shootings and violence had occurred at the high school before.  Defendant had also witnessed a fight on school grounds.  Defendant twice told Steele to leave school premises, but Steele responded by walking towards the school.  Under these facts and circumstances, a prudent person would believe that Steele "has committed, is committing or is about to commit" criminal trespassing.  Consequently, the Court **GRANTS** Defendant's motion for summary judgment on Steele's claim for arrest without probable cause. (Doc. # 14).

**B.      Excessive Force**

As previously stated, Steele asserts two excessive force claims - one involving his neck and one involving his face and head.  Steele argues that Defendant grabbed him by his neck and took him to the cruiser.  Steele continues that Defendant then struck his face and head into the trunk of the cruiser several times.  Defendant denies both of these claims, but moves for summary judgment only on Steele's excessive force claim for his neck.  (Doc. # 14 at 17).  In contrast, Steele moves for summary judgment on both of his excessive force claims. (Doc. # 15 at 1).

The Supreme Court has held that "all claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure'

15

of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation omitted). A reviewing court "should pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (quoting *Graham*, 490 U.S. at 396). In evaluating an excessive force claim, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Moreover, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

It is well established in the Sixth Circuit that the gratuitous use of force on a suspect who has already been subdued is unconstitutional. *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988). However, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (citation and quotation omitted).

### 1.     Neck

Regarding his neck, Steele testified that Defendant "grabbed [him] by his neck with one

16

hand" and took him to the police car.  (Steele Dep. 14, 53).  According to Steele, Defendant

grabbed him so hard he had imprints of Defendant's fingernails on his neck.  *Id.* at 50-51.

Defendant denies grabbing Steele's neck, stating that he took hold of Steele like he would have

any other individual.  (Def. Dep. 50-51).  Defendant also testified at his deposition that he did

not do anything that would have scratched or marked Steele's neck.  *Id.* at 74-75.  In addition,

after Defendant placed Steele in the cruiser, Chamberlain spoke with Steele.  (Chamberlain Aff.

¶ 9; Steele Dep. 16).  Chamberlain looked directly at Steele and did not see any "bruises,

scrapes, or marks on [Steele's] face or any part of his body."  (Chamberlain Aff. ¶ 9).

Defendant admits that Steele did not resist him when he took him into custody.  (Def.

Dep. 53).  Additionally, the severity of the crime at issue, trespassing, may fairly be

characterized as low.  Finally, Defendant did not state that Steele posed an immediate threat to

the safety of the officers or others - Steele was not carrying any weapons and did not resist once

Defendant took him into custody.  However, a genuine issue of material fact exists as to whether

Defendant exerted any force on Steele by grabbing his neck.  Given these facts, the Court cannot

ascertain whether Defendant used force at all, and if he did, whether the use of force was

reasonable or excessive.  Consequently, the Court **DENIES** both parties' motions for summary

judgment on this claim.  (Doc. # 14; Doc. # 15).

## 2.    Head

Lastly, Steele asserts that after Defendant had escorted him to the cruiser, Defendant used

excessive force against him in violation of the Fourth Amendment by repeatedly "slamming" his

head into the cruiser's trunk.  (Doc. # 1 at ¶¶ 6, 13; Steele Dep. 14).  Defendant denies Steele's

allegation. (Doc. # 14 at 17).

17

A genuine issue of material fact therefore exists as to whether Defendant exerted any force against Steele at all. This, of course, prevents the Court from determining whether the force was excessive or reasonable under the circumstances.  As such, the Court **DENIES** Steele's motion for summary judgment on this claim.  (Doc. # 15).

## IV.    QUALIFIED IMMUNITY

Defendant asserts the defense of qualified immunity.  (Doc. # 14 at 17-18).  The Sixth Circuit directs: "First, the Court considers whether, on the plaintiff's facts, has there been a violation.  Second, the Court considers whether that violation involved 'clearly established constitutional rights of which a reasonable person would have known.'"  *Hoover v. Radabaugh*, 307 F. 3d 460, 465 (6th Cir. 2002) (quoting *Dickerson v. McClelland*, 101 F. 3d 1151, 1158 (6th Cir. 1996)).

Because the Court cannot determine whether Defendant violated Steele's Fourth Amendment right to be free from the use of excessive force, the Court cannot address Defendant's qualified immunity defense.

CONCLUSION

In brief, the Court **GRANTS** Defendant's motion to strike.  (Doc. # 36).  The Court **GRANTS** in part and **DENIES** in part Defendant's motion for summary judgment.  (Doc. # 14). The Court **DENIES** Steele's motion for summary judgment.  (Doc. # 15).  Hence, Steele's Fourth Amendment excessive force claims regarding his head and neck are the only claims remaining for trial.

**IT IS SO ORDERED.**

18

   /s/ Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**